UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re Arbitration Between                                    Civil No. 08-5472 (JNE/FLN)
Wells Fargo Bank, N.A.,

        Claimant,

and

WMR e-PIN; e-Banc, LLC,                          **REPORT AND**
and Synoran LLC, a/k/a Synoran, Inc.             **RECOMMENDATION**

        Respondents.

_____

Richard T. Thomson, Kevin M. O'Brien, W. Bart Rankin for Wells Fargo Bank.
Frederick E. Finch, T. Earl LeVire for Synoran LLC, e-Banc, LLC and WMR e-PIN.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on January

30, 2009, on Wells Fargo's Motion for Order to Correct Arbitration Award and Confirm Arbitration

Award As Corrected, and Entry of Judgment Thereon [#37], Synoran's Motion to Vacate or Modify

Arbitration Award [#5], and WMR e-PIN LLC's Motion to Vacate or Modify Arbitration Award

[#7, #15].  The matter was referred to the undersigned for Report and Recommendation pursuant to

28 U.S.C. § 636 and Local Rule 72.1.

## I.    BACKGROUND

Petitioner Wells Fargo requests that the Court correct an arbitration award and enter

judgment upon it.  Respondents seek to vacate the same award.

In December 2001, Wells Fargo Bank, LLC ("Wells Fargo") began working with

1

Respondent e-Banc, LLC ("e-Banc"[1]) to develop computer software that would better manage its customers' information. (Petition Ex. A at 3, 8.) Wells Fargo brought the arbitration at issue against WMR e-PIN and Data Treasury Corporation in regard to a May 28, 2004 Patent License Agreement (the "PLA") between Wells Fargo and WMR e-PIN. (Declaration of Barton Rankin (hereinafter "Rankin Decl."), Ex. B.) The PLA incorporated by reference the dispute resolution procedures set forth in the December 17, 2001 Software License Agreement ("SLA") entered into between Wells Fargo and e-Banc, which required the parties to resolve disputes through arbitration. (Affidavit of Frederick E. Finch (hereinafter "Finch Aff.") Ex. A.) In addition to the initial claims brought by Wells Fargo, the parties filed a number of counterclaims regarding the development of software called the Digital Information Exchange ("DIXE"). (Rankin Decl. Ex. D, E.) Wells Fargo claimed in part that the Respondents had misappropriated the DIXE technology and Respondents claimed that Wells Fargo had misappropriated the technology. (*Id.*) The Arbitration Panel (the "Panel"), consisting of attorneys Leo Stern, Edward Stringer and Justin Perl, dismissed the claims relating to the PLA and allowed the remaining claims to go forward.

In May 2008, the Panel heard twelve days of testimony and issued its Findings of Fact, Conclusions of Law and Award on July 16, 2008. (Rankin Aff. Ex. B.) The Panel dismissed the following Synoran and WMR e-PIN claims against Wells Fargo: (1) breach of the Reciprocal Non-Disclosure Agreements dated March 21, 2001 and March 6, 2002; (2) breach of the December 17,

---

[1] Respondent WMR e-PIN LLC ("WMR e-PIN") is a successor in interest to and affiliated with e-Bank. (Rankin Aff. Ex. E at 1.) e-Banc's name was, at some stage, changed to Synoran, Inc. ("Synoran"). (Rankin Aff. Ex. B at 5.) The Court refers to these parties collectively as the Respondents.

2001 SLA; (3) breach of the Deliverable Scope Agreement dated August 18, 2003; (4) misrepresentation; and (5) misappropriation. (Rankin Aff. Ex. B at 36.) The Panel granted the following claims brought by Wells Fargo against Respondents: (1) breach of the Deliverable Scope Agreement Dated August 18, 2003; (2) breach of the SLA dated December 17, 2001; and (3) misappropriation of the DIXE Trade Secrets. *Id.* at 37. The Panel further concluded that Wells Fargo was the "inventor and owner" of all of the DIXE Trade Secrets, that Synoran and WMR e-PIN were enjoined from claiming such trade secrets as their own and from using them in any way, and that Synoran and WMR e-PIN were to pay Wells Fargo's reasonable attorney's fees of $1,265,000.00 and costs of $600,000.00. *Id.*

### 1. The Agreement to Arbitrate.

The December 17, 2001 SLA between Wells Fargo and e-Banc provided that all disputes regarding the SLA must be resolved through arbitration. The agreement purported to set forth the grounds upon which an arbitration award may be vacated, modified or corrected:

> [T]he parties shall have in addition to the grounds referred to in the Federal Arbitration Act for vacating, modifying or correcting an award, the right to judicial review of (A) whether the finding of fact rendered by the arbitrators are supported by substantial evidence, and (B) whether the conclusions of law are erroneous under the substantive law of the state in which the arbitration is held. Judgment confirming an award in such a proceedings may be entered only if a court determines the award is supported by substantial evidence and not based on legal error under the substantive law in which the arbitration is held.

(SLA at 28, ¶ 8; Finch Aff. Ex. A.)

The SLA also precluded the Panel from issuing an injunction, providing that: "[a]ny award in arbitration under this section shall be limited to monetary damages and shall include no injunction or direction to any party other than the direction to pay a monetary amount." (Finch Aff. Ex. A at 28.) Nevertheless the parties requested injunctive relief from the Panel during oral argument and

3

in their briefs.  In Respondents' final argument submitted to the Panel, they requested that the Panel declare that "Wells has misappropriated . . . WMR's confidential trade secrets and enjoin Wells from using such confidential information and trade secrets . . ."  (Rankin Aff. Ex. H at 38.)  During his closing argument to the Panel, counsel for Synoran and WMR e-PIN again requested injunctive relief: ". . . that would be our preference that you find that they [misappropriated trade secrets] and you enjoin them from using the software as it's defined in our proposed order."  (Rankin Aff. Ex. I at 1421.)    In Wells Fargo's Pre-Hearing Brief, it requested that Respondents be enjoined from holding out the DIXE system as their own.  (Rankin Aff. Ex. G at 20.)

Under the terms of the SLA, the "prevailing party" in the arbitration is "entitled to recover its reasonable attorney's fees (including, if applicable, charges for in-house counsel), court costs and other legal expenses from the other party." (Rankin Decl. Ex. J at 12.)  The Dispute Resolution Procedures at Attachment D to the SLA set forth a somewhat different standard, providing that arbitrators "shall have the power to award recovery of all costs and fees . . . to the same extent a judge could pursuant to the Federal Rules of Civil Procedure, or other applicable law."  (Rankin Decl. Ex. J at 28.)  The SLA also provides that "Arbitrators . . . shall resolve all disputes in accordance with the substantive law of the state in which the arbitration is held."  *Id.*

In addition, both parties requested attorney's fees from the arbitration panel, submitting detailed affidavits by their attorneys setting forth the fees, costs and disbursements charged to their clients.  (Rankin Decl. Ex. F at 11, Ex. L at 11.)

### 2.  Correction of the Award.

Wells Fargo sent the Panel a letter on September 23, 2008 notifying it of an error in its July 16, 2008 Award.  (Rankin Aff. Ex. R.)  Wells Fargo contended that the paragraph in the order which

awarded them attorney's fees ordered the wrong party to pay. In that paragraph, the Panel ordered

Synoran and WMR *e-Banc* LLC to pay their fees and costs rather than ordering Synoran and WMR

*e-PIN* to do so. Upon receipt of a follow-up letter written to the Panel by Wells Fargo on September

30, 2008, the Panel sent the parties a letter acknowledging receipt of the letter from Wells Fargo and

requested written comments from Respondents. *Id.* Respondents submitted a letter to the Panel on

October 10, 2008 setting forth their position that the request for correction was untimely and that

holding WMR e-PIN liable for attorney's fees would be a redetermination of the merits. On October

27, 2008, the Panel issued an Award and Memorandum. (Rankin Aff. Ex. S.) The Panel stated it

had found good cause to extend the time limits of Rule 46 of the AAA Commercial Arbitration

Rules and ordered that paragraph 8 on page 38 of the Award be deleted and replaced with the

paragraph set forth in the Award ordering Synoran, Inc. and WMR e-PIN to pay Wells Fargo's

reasonable attorney's fees of $1,265,000 and costs of $600,000. *Id.*

## II.    DISCUSSION

### A.    Standard of Review.

Review of arbitration awards is governed by the Federal Arbitration Act (the "FAA"), 9

U.S.C. § 1, *et seq.* The statute provides that arbitration awards may be *vacated* in the following

limited circumstances:

> (1)    where the award was procured by corruption, fraud, or undue means;
> (2)    where there was evident partiality or corruption in the arbitrators, or either of them;
> (3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4)    where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the

subject matter submitted was not made**.**

9 U.S.C. §10.  A court may *modify* or *correct* an arbitration award where:

      (1)      there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award;

      (2)      the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or

      (3)      the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

    The United States Supreme Court recently held that the statutory grounds for vacating or modifying awards set forth in the statute are exclusive when reviewing an award under the FAA. *Hall Street Associates, LLC v. Mattel, Inc.*, 128 S.Ct. 1396 (2008).  In this case, the parties agreed in the SLA to arbitrate pursuant to the FAA.  The SLA states: "[a]ll disputes submitted to arbitration shall be resolved in accordance with the Federal Arbitration Act . . ."  (Finch Aff. Ex. A at 28.)  The Court therefore reviews this case under the FAA and, pursuant to the Supreme Court's holding in *Hall Street*,  the grounds set forth in that statute are the exclusive grounds for review.

    Further, the two extra-statutory grounds for judicial review recognized by the Eighth Circuit before the Supreme Court's ruling in *Hall Street* are overruled by *Hall Street*.  *Prime Therapeutics LLC v. Omnicare, Inc.*, 555 F.Supp.2d 993, 999 (D. Minn. 2008).  Those extra-statutory grounds for vacating an award were: (1) where the award was completely irrational, or (2) where it manifested a disregard for the law.  *Id.* (citing *Hoffman v. Cargill*, 236 F.3d 458, 461 (8th Cir. 2001).  The court in *Prime Therapeutics* reasoned that these grounds were overruled by *Hall Street* because "it would be somewhat inconsistent to say that the parties cannot contractually alter the FAA's exclusive

grounds for vacating or modifying an arbitration award, but then allow the courts to alter the exclusive grounds by creating extra-statutory bases for vacating or modifying an award." *Id.* The court further referred to the Supreme Court's reasoning in *Hall Street*:

> Instead of fighting the text, it makes more sense to see the three provisions, §§ 9-11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the fully-bore legal and evidentiary appeals that can rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process, and bring arbitration theory to grief in post-arbitration process.

*Id.* (citing *Hall Street* at 1405). This Court agrees with the *Prime Therapeutics* court that the *Hall Street* decision overrules the Eighth Circuit's extra-statutory grounds for vacating the decision of an arbitration panel, leaving the grounds set forth in the FAA as the exclusive grounds for judicial review.

**B.      Respondents'[2] Motions to Vacate or Modify Arbitration Award [#5, #7 and #15] must be denied.**

**1.      The arbitration panel did not exceed its authority by issuing an injunction.**

Respondents argue that the Panel exceeded its authority by awarding injunctive relief because the SLA explicitly stated that the Panel could not award such relief.[3]   Respondents, however, waived their right to make this argument by requesting injunctive relief from the Panel in their written submissions and in oral argument.

_____

[2]  Even though Synoran and WMR e-PIN filed separate motions to vacate, the Court refers to them collectively as Respondents here.  Synoran and WMR e-PIN stated in their briefs that they sought to join each other's arguments where appropriate.  Unless the Court refers to the parties individually, it assumes that both parties are making the argument at issue.

[3]  The SLA states: "[a]ny award in arbitration under this section shall be limited to monetary damages and shall include no injunction or direction to any party other than the direction to pay a monetary amount."  (Affidavit of Aff. Ex. A at 28.)

The scope of an arbitrator's authority is generally defined by the agreement providing for arbitration. *Gas Aggregation Svcs., Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060, 1064 (8th Cir. 2003). However "[o]nce the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, we must look both to their contract *and* to the submission of the issue to the arbitrator to determine his authority." *Bureau of Engraving v. Graphic Commc'n Int'l Union, Local 1B*, 284 F.3d 821, 825 (8th Cir. 2002). "If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter." *Minneapolis-St. Paul Mailers Union, Local #4 v. Northwest Publications, Inc.*, 379 F.3d 502, 509 (8th Cir. 2004) (quoting *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 591 (7th Cir. 2001); *Starks v. Rent-A-Center*, 58 F.3d 358, 362 (8th Cir. 1995) (holding it is "fundamental" that where the party claiming error "opened the door" and "invited" the error there can be no reversible error) (quoting *Federal Crop Ins. Co. v. Hester*, 765 F.2d 723, 727 (8th Cir.1985).

Respondents waived their right to argue that the Panel was precluded from awarding injunctive relief by the terms of the SLA. Respondents never made the argument to the Panel; instead they requested injunctive relief from them. *Minneapolis-St. Paul Mailers Union, Local #4 v. Northwest Publications, Inc.* which is on point in this case. 379 F.3d 502, 509 (8th Cir. 2004). In *Minneapolis-St. Paul Mailers Union*, the union plaintiff sued Northwest Publications to vacate an arbitration award. The union argued the panel exceeded its authority by ruling on a number of issues that were, by contract, supposed to be presented to a joint standing committee before going to arbitration. *Id.* at 509. If the issues could not be resolved by the joint standing committee, they were then to be referred to arbitration. *Id.* The issues in dispute were never presented to the joint

standing committee before going to arbitration.  *Id.*  The court assumed that the union had a

contractual right to have the issues submitted first to the joint standing committee.  *Id.*  The court

reasoned, however, that the union's contractual right was waived by "willingly and without

reservation allowing the arbitrator to consider [the issues]."  *Id.*

Here, both parties allowed the issue of injunctive relief to be submitted to the Panel by

explicitly requesting injunctive relief from the Panel.  In Respondents' final argument submitted to

the Panel, they requested, in part, that the Panel declare that "Wells has misappropriated . . . WMR's

confidential trade secrets and enjoin Wells from using such confidential information and trade

secrets . . ."  (Rankin Aff. Ex. H at 38.)  Further, during his closing argument to the Panel, counsel

for Synoran and WMR e-PIN again requested injunctive relief: ". . . that would be our preference

that you find that they [misappropriated trade secrets] and you enjoin them from using the software

as it's defined in our proposed order."  (Rankin Aff. Ex. I at 1421.)    For its part, Wells Fargo

requested in its Pre-Hearing Brief that Respondents be enjoined from holding out the DIXE system

as their own.[4]  (Rankin Aff. Ex. G at 20.)

Citing to *Missouri River Svcs., Inc. v. Omaha Tribe of Neb.*, 267 F.3d 848, (8th Cir

2001), Respondents contend that an arbitrator may not award relief expressly forbidden by the

agreement of the parties.  *Missouri River* is not on point, however, because there was no waiver

---

[4]  Respondents contend their requests for injunctive relief were not a "concession that the panel had authority to award injunctive relief."  (Synoran's Reply at 3.)  Synoran further contends that because Respondents "questioned whether the Panel could award any injunction and specifically disputed the Panel's authority to issue an injunction in favor of Wells," they never conceded that the Panel was authorized to issue an injunction.  *Id.* The Court rejects this argument. Respondents explicitly requested the Panel grant injunctive relief. In the alternative, Respondents argued that the question of ownership of the intellectual property be left to the United States Patent and Trademark Office.  (Rankin Decl. Ex. H at 38.)

issue in that case.  There, the court concluded that the arbitrator failed to "draw from the essence of the [arbitration] agreement"[5] because the arbitrator awarded damages to plaintiff to be paid from proceeds generated from a business that was not at issue in the case when the arbitration agreement specifically stated that any arbitration award could only be satisfied from the Nebraska property at issue or from profits generated from it.  *Id.* at 855.  There was no argument that the party seeking to vacate the award had requested of the arbitrator that she award damages in a manner contrary to the written arbitration agreement between the parties.  The moving party in that case did not therefore waive its right to argue that the award failed to draw from the essence of the agreement.  In this case, the Respondents waived their right to argue that the Panel exceeded its authority by issuing an injunction because they themselves requested injunctive relief from the Panel.

> **2.      The Panel did not exceed its authority by ordering Respondents to pay attorneys' fees and costs.**

> > **a.      Respondents waived their right to challenge the fee award.**

Respondents contend that the Panel exceeded its authority by ordering them to pay Wells Fargo's attorney's fees and costs for a number of reasons.  For the same reasons discussed above with respect to injunctive relief, Respondents have waived their right to make this argument.

"If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority

---

[5]  A failure to draw from the essence of the arbitration agreement is no longer a ground upon which this Court may vacate an arbitration award.  *See Prime Therapeutics LLC v. Omnicare, Inc.*, 555 F.Supp.2d 993, 999 (D. Minn. 2008) (holding that the two extra-statutory grounds for vacating or correcting an arbitration award were overruled by the Supreme Court's holding in *Hall Street*).  That issue aside, the case is not on point, as discussed above.

to decide the matter." *Minneapolis-St. Paul Mailers Union*, 379 F.3d at 509. Both Wells Fargo and Respondents gave the Panel the authority to award costs and fees by requesting attorney's fees and costs from the Panel, submitting detailed affidavits by their attorneys setting forth the fees, costs and disbursements charged to their clients. (Rankin Decl. Ex. F at 11, Ex. L at 11.) Respondents have therefore waived their right to claim that the Panel lacked the authority to award attorney's fees.

> **b.**     **Even if Respondents did not waive their right to challenge the award of attorney's fees and costs, the Panel did not exceed its authority by awarding them.**

The scope of an arbitrator's authority is generally defined by the agreement providing for arbitration. *Gas Aggregation Svcs.*, 319 F.3d at 1064.[6] Further, the district court gives an arbitrator's decisions "an extraordinary level of deference" and confirms them "so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 798 (8th Cir. 2004).

The Panel did not exceed its authority by awarding fees and costs because the SLA gave the Panel the authority to award fees and costs. The SLA provided that the prevailing party in the arbitration was "entitled to recover its reasonable attorney's fees (including, if applicable, charges for in-house counsel), court costs and other legal expenses from the other party," (Rankin Decl. Ex. J at 12.) The Dispute Resolution Procedures at Attachment D to the SLA set forth a somewhat different standard, providing that arbitrators "shall have the power to award

---

[6] However, "[o]nce the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority." *Bureau of Engraving*, 284 F.3d at 825.

recovery of all costs and fees . . . to the same extent a judge could pursuant to the Federal Rules of Civil Procedure, or other applicable law." *Id.* at 28. The SLA also provides that "Arbitrators . . . shall resolve all disputes in accordance with the substantive law of the state in which the arbitration is held." *Id.* Under Minnesota law, attorneys fees and costs are available if provided for by contract or statute. *Riser v. Minneapolis Public Housing Auth.*, No. A04-11, 2004 WL 2050550, at *1 (Minn. Ct. App. 2004). The contract here provides that attorneys' fees and costs may be awarded to the prevailing party and therefore the Panel was following not only Minnesota law but also the terms of the parties' agreement in awarding fees and costs to Wells Fargo.

Respondents next contend that the Panel exceeded its authority in making the determination that Wells Fargo was the prevailing party in the arbitration. The Court disagrees. First, the SLA gave the Panel the authority to award attorney's fees to the prevailing party and given the highly deferential standard under which this Court reviews arbitration awards, the inquiry should end there. Nevertheless, taking the analysis further, under Minnesota law, the Panel had considerable discretion in determining the prevailing party. *Riser*, 2004 WL 2050550, at *3. In a case such as this with a number of claims and counterclaims:

> the litigation takes on a complexity and dynamic best understood by the district court. The court is not obliged to determine the wins and losses, count-by-count, claim-by-claim, total up each side's victories and losses, and award individual fees that either offset one another or survived as independent claims. Rather, the district court has discretion to look at the entire litigation to determine whether a party was successful or unsuccessful overall.

*Id.* Here, the panel dismissed Synoran and WMR e-PIN's claims of breach of the Reciprocal Non-Disclosure Agreements, breach of the SLA, breach of the Deliverable Scope Agreement, misrepresentation and misappropriation of trade secrets. (Rankin Aff. Ex. B at 36.) The Panel

12

found in favor of Wells Fargo on its claims that Synoran and WMR e-PIN breached the Deliverable Scope Agreement and the SLA and misappropriated Wells Fargo's DIXE Trade Secrets. The Panel stated that, in awarding attorneys' fees and costs to Wells Fargo, it also took into account Synoran's status as a prevailing party on a number of claims addressed in Procedural Orders Nos. 8 and 9. The Panel certainly did not exceed its authority in making the award and, further, followed Minnesota law in doing so.

Respondents also contend Wells is not entitled to attorney's fees and costs because Wells did not prevail on its claim for damages. The SLA provides that attorney's fees and costs shall be available to the prevailing party. The agreement does not require that the prevailing party be awarded damages in order to receive attorney's fees and costs. Further, under Minnesota law, damages are separate and distinct from attorney's fees and costs which are only recoverable where permitted by contract or statute. *See Fownes v. Hubbard Broadcasting*, 310 Minn. 540, 544-45 (1976).

Finally, Respondents contend the fee award was improper because the DIXE Trade Secrets were public information when Wells asserted trade secret claims. The Court declines to consider this argument. The Eighth Circuit has held that it will not "reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Id.* "In other words, we 'do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.'" *Homestake Mining Co. v. United Steelworkers of America*, 153 F.3d 678 (8th Cir. 1998) (quoting *United Paperworkers*, 484 U.S. at 38).

> **c.    The Panel did not exceed its authority by correcting a typographical error in the Award.**

WMR e-PIN contends that the Panel exceeded its authority when it issued the October 27, 2008 Award ordering Synoran and WMR e-PIN to pay attorney's fees and costs. (Rankin Decl. Ex. S.) The original July 16, 2008 Award had ordered Synoran and WMR *e-Banc* LLC to pay fees and costs, but the entity WMR e-Banc LLC does not exist. (Petition Ex. A at 38.) WMR e-PIN contends that the Panel should have amended the Award to order Synoran and e-Banc (Synoran's former name) to pay the fees and costs.

> **1)    The correction was made according to the rules of the American Arbitration Association's ("AAA") Rules of Commercial Arbitration.**

The Panel did not exceed its authority by issuing the corrected order in accordance with the AAA's Rules of Commercial Arbitration.

Rule 46 of the AAA's Rules of Commercial Arbitration provides that:

> Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto.

The error was discovered and corrected more than 20 days after the transmittal of the original award on July 21, 2008, but the Panel found there was good cause under Rule 38 of the AAA's Rules of Commercial Arbitration to modify the time period. Rule 38 provides:

> The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The AAA shall notify the parties of any extension.

Further, pursuant to Rule 46, the Panel, upon receipt of Wells Fargo's letter requesting the correction, gave the Respondents 10 days to respond to the request. (Rankin Decl. Ex. R.)

Respondents did respond via letter setting forth their position. *Id.* The Panel gave Respondents the opportunity to state their position regarding Wells Fargo's request for a correction.

Respondents' contend that the Panel failed to notify them that it was granting an extension under Rule 38 and, as a result, deprived Respondents of the opportunity to respond substantively to Wells Fargo's request. This argument is without merit. Respondents' October 20, 2008 letter to the Panel squarely addresses the substance of Wells Fargo's request. In the letter, Respondents contend Wells Fargo's request is untimely and that the requested relief would violate Rule 46 by redetermining the merits of the claims already decided. Given that Respondents make the same substantive arguments to this Court that were made in their October 20, 2008 letter, it is disingenuous for them to argue that they were denied the opportunity to make substantive objections to Wells Fargo's request for correction.

### 2) The October 30, 2008 Award was not a redetermination of the merits.

WMR e-PIN contends it was a nominal party in the arbitration and the Panel's correction of the typographical error was a redetermination of the merits which is prohibited by Rule 46 of the American Arbitration Association.

WMR e-PIN was not a nominal party in the arbitration. In their written submissions to the Panel, Respondents made no attempt to distinguish between Synoran and WMR e-PIN. In the document titled "Respondents' Counterclaims and Supplemental Claims" submitted to the Panel, the Respondents state: "WMR e-PIN is a successor in interest to and affiliated with e-Banc LLC and Synoran, Inc. (Rankin Decl. Ex. E at 1.) WMR e-PIN, e-Banc LLC and Synoran collectively referred to themselves as Respondents throughout the arbitration. WMR e-PIN and Synoran make a claim for "Misappropriation of Trade Secrets" in which they claim: ". . . Wells

Fargo disclosed Respondents' intellectual property, under the DIXE label, to various third parties. As a direct result of such misappropriations, Respondents have been damaged in an amount to be proven at the hearing on this matter." (Rankin Decl. Ex. E at 5.) In the same submission, the parties stated: "Respondents have been damaged and seek the following relief . . . [c]osts, disbursements, interest and attorneys fees as allowable by law or contract . . ." (*Id.* at 7.) Attorneys for Synoran, WMR e-PIN and e-Banc LLC requested attorneys' fees from the panel for representation of all three entities. In his affidavit, attorney Lewis A. Remele states he was "counsel of record for respondents WMR e-PIN, LLC, e-Banc and Synoran, Inc. (collectively referred to herein as "Synoran"). (Rankin Aff. Ex. L.) In attorney Edwin Baranowski's affidavit, he stated he was seeking attorney's fees for representation of all entities: "[s]ince approximately 2000, I have represented Synoran, LLC, formerly e-BANC LLC . . . [s]ince approximately 2001, I have represented WMR e-PIN LLC . . . I submit this affidavit in support of the award of attorneys' fees to Synoran and WMR in the arbitration." (Rankin Aff. Ex. L.)

**3.     Respondents' argument that the Panel exceeded its authority by making an award not supported by substantial evidence must be rejected.**

Respondents contend that this Court should review the Panel's decision to determine whether or not it was based upon substantial evidence. This type of review is not a ground upon which arbitration awards may be vacated under the FAA. Under the Supreme Court's ruling in *Hall Street*, the statutory grounds for review are exclusive.

In *Hall Street*, the Supreme Court held that the parties may not contract to expand the grounds upon which an arbitration award may be reviewed by the court. In that case, the terms of the arbitration agreement expanding the grounds upon which the court may review the

arbitration award are almost identical to the terms in the arbitration agreement in this case. In

that case, the arbitration agreement between Hall Street and Mattel provided that

> the United States District Court for the District of Oregon may enter judgment
> upon any award, either by confirming the award or by vacating, modifying or
> correcting the award. The Court shall vacate, modify or correct any award: (I)
> where the arbitrator's findings of facts are not supported by substantial evidence,
> or (ii) where the arbitrator's conclusions of law are erroneous.[7]

Here, the SLA provides:

> [T]he parties shall have in addition to the grounds referred to in the Federal
> Arbitration Act for vacating, modifying or correcting an award ,the right to
> judicial review of (A) whether the finding of fact rendered by the arbitrators are
> supported by substantial evidence, and (B) whether the conclusions of law are
> erroneous under the substantive law of the state in which the arbitration is held.
> Judgment confirming an award in such a proceedings may be entered only if a
> court determines the award is supported by substantial evidence and not based on
> legal error under the substantive law in which the arbitration is held.

(Finch Aff. Ex. A at 28.) Synoran and WMR e-PIN contend that the language preceding this

section which states that "arbitrators shall not have the power to make any award which is not

supported by substantial evidence or which is based on legal error" renders the arbitration

agreement fundamentally different from that in *Hall Street* because rather than expanding

grounds for vacatur, the agreement limits the power of arbitrators. However, the Court finds that

the clause in the SLA forbidding the arbitrators to make an award which is not based upon

substantial evidence is simply an effort to expand the grounds of judicial review. First, the

clause appears in the paragraph of the Agreement titled "Judicial Review;" it is not located in the

paragraph defining the arbitrator's powers, titled "Arbitrator Qualifications and Powers;

---

[7] The grounds for review set forth in the arbitration agreement in this case are almost
identical those in the agreement in *Hall Street*.

Awards."  Second, the clause outlines the Panel's power solely in terms of the standard of review a reviewing court would use in reviewing the Panel's decision; it does not proscribe any concrete powers.[8]  Given the location of the clause and substance of the clause, it is apparent that the clause was drafted in an attempt to expand the grounds for judicial review beyond those set forth in the statute, not to define the scope of the arbitrator's power.  Further, even if the Court found that the clause was intended to define the scope of the arbitrator's power, it could only do so by expanding the grounds for judicial review, as the only method for determining whether the arbitrator exceeded his powers would be to review on substantial evidence grounds - which is not a ground for judicial review under the FAA.  No matter how the substantial evidence standard is framed in the contract, it inevitably lead the Court back to the same place - impermissibly expanding grounds for judicial review.

Even before the Supreme Court's holding in *Hall Street*, the Eighth Circuit declined to review arbitration awards on expansive grounds such as the squishy substantial evidence standard. *Homestake Mining Co. v. United Steelworkers of America*, 153 F.3d 678 (8th Cir. 1998) (holding that the court does not "sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.") (quoting *United Paperworkers*, 484 U.S. at 38).  Under Title 9 U.S.C. § 10, a court may vacate an arbitration award if the panel exceeded its powers, but such a review nevertheless does not extend to a full

---

[8]  In contrast, the paragraph of the SLA titled "Arbitrator Qualifications and Powers; Awards" provides that arbitrators have the power to: (1) resolve disputes in accordance with state law; (2) grant any remedy that a state court could grant; and (3) award costs and fees.

blown review of the merits of the case.[9]

Respondents also contend the Supreme Court in *Hall Street* left open the possibility of challenging arbitration panel decisions on grounds other than those set forth in the FAA. The Supreme Court specifically stated in *Hall Street*: "the FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable." 128 S.Ct. at 1406. The Court does not dispute this possibility. However, in this case, the arbitration agreement specifically states that "[a]ll Disputes submitted to arbitration shall be resolved in accordance with the Federal Arbitration Act (Title 9 of the United States Code)." The agreement does not provide for review under Minnesota state arbitration law, for example, even though such a scheme exists. *See* Minn. Stat. 572.08, *et seq*.

Therefore, Respondents' argument that this Court should review the Panel's decision to determine whether or not it was based on substantial evidence must be rejected.

4.      **The Panel did not exceed its authority by concluding that Wells was the "inventor and owner" of the DIXE trade secrets.**

Respondents claim the Panel exceeded its authority by concluding that Wells Fargo was the inventor of the DIXE trade secrets because inventorship can only be determined by the United States Patent and Trademark Office.

An arbitrator's authority is established by the arbitration agreement between the parties and the submissions of the parties to the panel. *Bureau of Engraving*, 284 F.3d at 825. The

_____

[9] The two extra-statutory grounds of review recognized by the Eighth Circuit before the Supreme Court's ruling in *Hall Street* are overruled by *Hall Street*. *Prime Therapeutics*, 555 F.Supp.2d at 999. *See*, *infra* pp 6-8.

arbitration agreement in the SLA allowed the Panel to resolve "any action, dispute, claim or controversy of any kind, whether in contract or tort, statutory or common law, legal or equitable, now existing or hereafter arising under or in connection with, or in any way pertaining to this Software License Agreement."[10]  (SLA at 28, Rankin Decl. Ex. J.)  The Panel's ruling on the parties' misappropriation claims regarding the DIXE trade secrets that were developed pursuant to the terms of the SLA fall within the Panel's authority. (*See* Wells Fargo Post-Hrg Brief at 33, Rankin Decl. Ex K; Respondents' Final Arg. at 38, Rankin Decl. Ex. H.) Further, in the parties' submissions to the Panel, they requested the panel determine who owned the trade secrets at issue and to conclude the opposing party misappropriated them.  (*See* Wells Fargo Post-Hrg Brief at 33, Rankin Decl. Ex K; Respondents' Final Arg. at 38, Rankin Decl. Ex. H.)

WMR e-PIN's argument that the issue of inventorship should not have been decided by the Panel because such decisions may only be made by the United States Patent and Trademark Office must be rejected.  "[W]e 'do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.'" *Homestake Mining*, 153 F.3d at 680.  The issue of whether the Panel exceeded its authority is limited to a review of the authority granted to the panel in the arbitration agreements and the arguments submitted by the parties.  It does not include a review for legal or factual error.

---

[10]  The Deliverable Scope Agreement setting forth the terms of the consulting agreement between Wells Fargo and e-Banc with regard to the DIXE technology incorporates the terms of the SLA dated December 17, 2001 and quoted above.  (DSA at 1, Rankin  Decl. Ex. O.)  The Deliverable Scope Agreement also states that "all intellectual property associated with this consulting engagement or such deliverables shall lie exclusively with Wells Fargo.  E-Bank acknowledges and agrees that Wells Fargo payment for the services described herein is based on the agreement that e-Bank shall not retain any rights in such jointly developed intellectual property."  (*Id.* at 3.)

The Panel did not exceed its authority in making a finding that Wells Fargo was the inventor of the DIXE trade secrets in order to make a ruling on the misappropriation claims. In their claims for misappropriation, both parties argued that they had invented the DIXE trade secrets and therefore owned them. In making a finding that Wells Fargo was the inventor of the DIXE trade secrets, the Panel was addressing the merits of the parties' arguments made to the Panel. Furthermore, Respondents' argument that the parties did not submit the question of inventorship to the Panel fails for the reasons just discussed. The Panel made the finding on inventorship in order to rule on the misappropriation claims because both parties argued to the Panel that they owned the DIXE trade secrets because they had invented them.

**C.** **Wells Fargo's Motion for Order to Correct Arbitration Award, Confirm Award as Corrected and Entry of Judgment Thereon [#37] must be granted.**

Wells Fargo requested the Court enter an order correcting the Award to change all mention of "Synoran, Inc." to "Synoran LLC." Respondents do not object to the requested correction. The Court therefore recommends that the Award be corrected to change all mention of Synoran, Inc. to Synoran LLC and that the Award be confirmed as corrected.

Wells Fargo also requests the Court to enter judgment in its favor and against Synoran LLC and WMR e-PIN LLC in the amount of $1,265,000 in attorney's fees plus $600,000 in costs for a total of $1,865,000 and for the other relief awarded to Wells Fargo in the Award including injunctive relief. For the reasons addressed in the Part B of this Report and Recommendation, judgment should be entered in favor of Wells Fargo.

**III.** **RECOMMENDATION**

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Respondents' Motions to Vacate or Modify Arbitration Award [#5, #7 and #15] be **DENIED**; and

2.      Wells Fargo's Motion for Order to Correct Arbitration Award, Confirm Award as Corrected, and Entry of Judgment Thereon [#37] be **GRANTED**, as follows:

   A.      The Award should be corrected to change all mention of "Synoran, Inc." to "Synoran, LLC;"

   B.      The Award should be confirmed as corrected; and

   C.      Judgment should be entered in favor of Wells Fargo Bank, N.A. and against Synoran LLC and WMR e-PIN LLC in the amount of $1,265,000 in attorney's fees and $600,000 in costs and for all other relief awarded by the Panel.


DATED: June 22, 2009                         *s/ Franklin L. Noel*
                                             FRANKLIN L. NOEL
                                             United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 10, 2009**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 10, 2009,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.